**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1624-23

COUNTY CONCRETE
CORPORATION,

     Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT, RICKY ANTOINE,
JAIME ASHLEY, CESAR BAYAS,
SIMRANJIT BHULLAR, RAYMOND
BONELI, ANDRES
BRANDONFORRISI, FRANCIS
BROWN, XAVIER CABEZAS,
LJ CALDWELL JR, MILTON
CAMPBELL, WILLIAM CANO,
JULIAN CEBALLOS, DAVID
COMPTON, CLARENCE CORBIN,
MICHAEL CRANE, RANDY
DEMERS, BENJAMIN DOSCH,
TIMOTHY EDMONDS, DAVID
ELLIOTT, AK ENGLISH, JULIO
ESTRADA, RODNEY FLORVIL,
RONALD GARDINER, GLEN
GARRABRANT, ROLAND GEBERT,
LUZ GOMEZ, MAURICIO GOMEZ,
KELVIN GONZALEZ, VINCENT

GREEN, HARVEY HARRIS, DELLIE
HOUSER, DAVID JENKINS JR,
MARVIN KOCHER, ALLEN
MANNA, MARQUIS MOTEN,
JUAN NIEVES-LLLESCAS, JOHN
O'NEILL, CHRISTOPHER PAPPA,
RASHAEE PARKER, WILLIAM
PARRA-CONTRERAS, LUIS
RAMIREZ, CARLOS RODRIGUEZ,
LUIS RODRIGUEZ, WILLIE
ROLLINS, ROBERT RUMBAUGH,
JOSEPH RUSSELL, CELENA SMITH,
JOHN STEELE, MANUEL SUAREZ,
THOMAS T SUTTON, DAWAN
THOMPSON, and RAFAEL VEGA,

       Respondents.

_____

Submitted May 12, 2025 – Decided May 30, 2025

Before Judges Sabatino, Berdote Byrne, and Jacobs.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 283229.

Brian P. Shire (Susanin, Widman & Brennan, PC) and Aubrey A. Strosser (Susanin, Widman & Brennan, PC), attorneys for appellant.

Zazzali, PC, attorneys for respondents Ricky Antoine, Jaime Ashley, Cesar Bayas, Simranjit Bhullar, Raymond Boneli, Andres Brandonforrisi, Francis Brown, Xavier Cabezas, LJ Caldwell JR, Milton Campbell, William Cano, Julian Ceballos, David Compton, Clarence Corbin, Michael Crane, Randy Demers, Benjamin Dosch, Timothy Edmonds, David

2

Elliott, AK English, Julio Estrada, Rodney Florvil, Ronald Gardiner, Glen Garrabrant, Roland Gebert, Luz Gomez, Mauricio Gomez, Kelvin Gonzalez, Vincent Green, Harvey Harris, Dellie Houser, David Jenkins JR, Marvin Kocher, Allen Manna, Marquis Moten, Juan Nieves-lllescas, John O'Neill, Christopher Pappa, Rashaee Parker, William Parra-Contreras, Luis Ramirez, Carlos Rodriguez, Luis Rodriguez, Willie Rollins, Robert Rumbaugh, Joseph Russell, Celena Smith, John Steele, Manuel Suarez, Thomas T Sutton, Dawan Thompson, and Rafael Vega (Colin M. Lynch, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Donna Arons, Assistant Attorney General, of counsel; Gina Labrecque, Deputy Attorney General, on the brief).

PER CURIAM

Appellant County Concrete Corporation ("CCC") appeals the final decision of the New Jersey Department of Labor and Workforce Development's Board of Review ("the Board") affirming the appeal tribunal's finding that CCC workers who participated in an unfair labor practice strike were not disqualified from receiving unemployment benefits pursuant to N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018).[1]   The CCC workers who filed claims with the

---

[1] We note N.J.S.A. 43:21-5 has been amended since this matter arose to render the legal issue before us prospectively moot, but our decision is based on the then-current version of N.J.S.A. 43:21-5 in the absence of language in the current version indicating retroactive application.  See Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016).

3

A-1624-23

Division of Unemployment Insurance ("the Division") sought unemployment benefits for the time period they were not paid due to the labor strike.

On appeal, CCC raises two issues. It argues: (1) the Board's determination is preempted by federal law; and (2) the Board's final decision is not supported by substantial evidence in the record. Because the Board's determination regarding unemployment benefits does not attempt to regulate conduct governed by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169, it is not preempted by federal law. We also conclude the record contains substantial evidence supporting the Board's determination and affirm.

I.

We glean the following facts from the record, which include facts jointly stipulated to by CCC and claimants. CCC, a concrete manufacturing company, employs members of the Teamsters Local 863 union ("the union") who are covered by five different collective bargaining agreements ("CBAs"). In November 2019, after the union filed an unfair labor practice charge with the NLRB against CCC relating to its alleged implementation of bonus programs for certain drivers, CCC signed an Informal Settlement Agreement ("the Settlement Agreement") with the union. Pursuant to the Settlement Agreement, CCC agreed to the following:

A-1624-23

> [CCC] **WILL NOT** unilaterally implement new employee bonus programs at a time when no impasse in bargaining with the Union has occurred <u>or any other lawful exception exists</u>.

By January 2021, all five of the CBAs covering CCC's union workers were no longer in effect, and in June 2021, CCC and the union were "in the process of negotiating new agreements." Although the parties were negotiating CBAs, CCC "unilaterally implemented a bonus program of $4.00 per load for redi-mix drivers and $3.00 per load for cement tanker drivers" on June 7, 2021. In response, the union filed an unfair labor practice charge, alleging CCC's implementation of the bonus program was in violation of Section 8(a)(1) and (5) of the NLRA. CCC likewise filed an unfair labor practice charge with the NLRB against the union, claiming the union committed an unfair labor practice and "violated Section 8(b)(3) of the NLRA by engaging in bad faith bargaining prior to [CCC's] implementation of the June 7, 2021 bonus program."

On June 14, 2021, the union went on strike to protest CCC's unilateral implementation of the bonus program, and claimants participated in the strike. On June 27, 2021, claimants filed requests for unemployment benefits with the Division pursuant to N.J.S.A. 43:21-5(d)(3).

In July 2021, the Division approved claimants' request for unemployment benefits. It determined claimants were eligible for unemployment insurance benefits because:

> You are unemployed due to a labor dispute at your employer's premises. It has been determined the labor dispute was caused by the failure or refusal of the employer[] to comply with an agreement or contract between the employer and the claimant, . . . or a state or federal law pertaining to hours, wages or other conditions of work. Therefore, in accordance with N.J.S.A. 43:21-5(d) you are eligible for benefits.

CCC filed an appeal with the Department of Labor and Work Force Development appeal tribunal. CCC and the union jointly stipulated to the factual record and waived their respective rights to a formal hearing. On December 13, 2021, the union concluded its strike.

The appeal tribunal issued a decision affirming the Division's determinations and finding "[n]o disqualification arises under N.J.S.A. 43:21-5(d)(1)(b)(3), as the work stoppage was the result of the employer's failure to comply with an agreement between the employer and the claimant(s)."[2] CCC appealed this decision to the Board.

---

[2] The appeal tribunal incorrectly cited N.J.S.A. 43:21-5(d)(1)(b)(3). The applicable statute is N.J.S.A. 43:21-5(d)(3).

The Board issued its written decision affirming the decision of the appeal tribunal. It stated:

> With respect to [CCC's] contention that the Division is preempted from opining or deciding upon matters of labor relations covered by the [NLRA], we agree with the union in that the U[nited] S[tates] Supreme Court ruling in New York Telephone Company v. New York State Department of Labor, 440 U.S. 519 (1979), later reinforced under Baker v. GM Corporation, 478 U.S. 621 (1986), is directly applicable as it protects the states' right to determine [unemployment benefits] eligibility in labor strike cases under their own rules, despite such rules' reliance on labor-related concepts solely regulated by the NLRA, provided that their determinations do not seek to regulate or penalize any actions or activities covered by the NLRA[,] . . . but only seek to decide unemployment benefit eligibility. We therefore reject [CCC's] contentions that preemption applies under San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959) or Lodge 76, International Association of Machinists and Aerospace Workers v. Wisconsin Employment Relations Commission, 427 U.S. 132 (1976) . . . .
>
> The standard of review for unemployment insurance eligibility being only "preponderance of evidence," we find that the record is sufficient to support the Appeal Tribunal's opinion that [CCC] failed or refused to comply with a term of the [Settlement Agreement] between [CCC] and the workers. Such opinion is not to be construed as a finding that the NLRA itself was violated[,] . . . only that a term of an agreement between the employer and the workers was defied. We note that [N.J.S.A. 43:21-5(d)(3)] . . . does not specify any particular type of "agreement" or contain any requirement that some resolution or confirmation of the

7

alleged failure or refusal to comply has to have been reached by some related authority or is even pending.

[(Citations reformatted).]

This appeal followed.

## II.

"Our review of administrative decisions is limited." Bd. of Educ. of Sparta v. M.N., 258 N.J. 333, 342 (2024). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "We review only '(1) whether . . . the agency follow[ed] the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether . . . the agency clearly erred in reaching a conclusion that could not reasonably have been' reached." Sparta, 258 N.J. at 342 (alteration in original; first omission in original) (quoting Allstars, 234 N.J. at 157). We review preemption determinations de novo, along with any "issues of statutory interpretation necessary to the preemption inquiry." In re Alleged Failure of Altice U.S., Inc., 253 N.J. 406, 415 (2023).

A. Federal Preemption

Sections 7 and 8 of the NLRA address preemption:

> NLRA preemption has a different focus. Section 7 of the NLRA protects employees' right to organize, to join labor unions, to collectively bargain, and to "engage in other concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 157. Section 8 makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." 29 U.S.C. § 158(a)(1). Congress left for the [NLRB], in its exclusive jurisdiction, to determine what activity is protected by Section 7 or prohibited by Section 8.
>
> [Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 268-69 (2016) (omission in original) (citations reformatted).]

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [Section] 7 of the [NLRA], or constitute an unfair labor practice under [Section] 8, due regard for the federal enactment requires that state jurisdiction must yield." Garmon, 359 U.S. at 244. To determine whether the NLRA preempts state action, the "analysis necessarily focuses on the activity that states seek to regulate instead of the method of regulation adopted." Puglia, 226 N.J. at 286. "A second [preemption] principle" was established in Machinists, which "prohibits state and municipal regulation of areas that have been left to be controlled by the free play of economic forces." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 25 (1994) (internal

9

quotation marks omitted) (quoting Bldg. & Constr. Trades Council v. Associated Builders & Contractors, 507 U.S. 218, 225 (1993)); see also Machinists, 427 U.S. at 140, 147.

In determining the claimants eligible for unemployment benefits, the Board did not regulate conduct protected by Section 7, decide unfair labor practices had occurred pursuant to Section 8, see Garmon, 359 U.S. at 244, or attempt to regulate an area designated to be controlled by economic forces, see Machinists, 427 U.S. at 140. Further, in applying its own unemployment statute, New Jersey was not attempting "to regulate conduct that is arguably protected or arguably prohibited under the NLRA," and it did not make determinations as to whether CCC's actions violated the NLRA. Puglia, 226 N.J. at 286.

The United States Supreme Court has addressed the issue of "whether the [NLRA] . . . implicitly prohibits" a state "from paying unemployment compensation to strikers" in New York Telephone. 440 U.S. at 522. In that case, the Communication Workers of America led a nationwide strike when its contract negotiations with the employer led to an impasse. Ibid. At the time, New York state law provided "[i]f a claimant's loss of employment [was] caused by a strike, lockout, or other industrial controversy in the establishment in which [the worker] was employed," the law would "suspend[] the payment of benefits

for an additional [seven]-week period," with unemployment compensation payments beginning on the eighth week of unemployment. Id. at 523 (internal quotation marks omitted). The Court concluded:

> In this case there is no evidence that the Congress that enacted the [NLRA] in 1935 intended to deny the States the power to provide unemployment benefits for strikers. Far from the compelling congressional direction on which [preemption] in this case would have to be predicated, the silence of Congress in 1935 actually supports the contrary inference that Congress intended to allow the States to make this policy determination for themselves.
>
> [Id. at 540 (footnote omitted) (citation omitted).]

The Court further noted "New York ha[d] not sought to regulate private conduct that [was] subject to the regulatory jurisdiction of the [NLRB]" or "sought to regulate any private conduct of the parties to a labor dispute," but "[i]nstead, . . . sought to administer its unemployment compensation program in a manner that it believe[d] best effectuate[d] the purposes of that scheme." Id. at 545-46.

In Duer Spring and Manufacturers Company v. Pennsylvania Department of Labor, 906 F.2d 968 (3d Cir. 1990), the Third Circuit Court of Appeals reached a similar conclusion when it addressed whether an employer "demonstrated a significant likelihood that it would succeed on the merits in

proving that Pennsylvania's unemployment compensation law is [preempted] by the [NLRA]." 906 F.2d at 969. In <u>Duer Spring</u>, a union initiated a work stoppage after its CBA with an employer expired, and the employer responded by initiating a constructive lockout upon refusing the workers' offer to return to work. <u>Ibid.</u> The Third Circuit noted the New York unemployment statute at issue in <u>New York Telephone</u> differed from the Pennsylvania statute in <u>Duer Spring</u>, and "the Pennsylvania courts [had to] decide whether a work stoppage resulted from a strike or a lock-out . . . [by determining] which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." <u>Id.</u> at 971 (alteration and omission in original) (internal quotation marks omitted). It concluded that the differences between the two states' statutes were not dispositive, and what was "more important [was] that neither regulates the conduct of the parties in the dispute, although they both ameliorate the effect on the workers of the dispute to some extent." <u>Ibid.</u>

In the matter before us, the then-current version of N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018), New Jersey's unemployment benefits statute, stated "[a]n individual shall be disqualified for benefits"

> (d) [i]f it is found that this unemployment is due to a stoppage of work which exists because of a labor

12

dispute at the factory, establishment or other premises at which the individual is or was last employed, except as otherwise provided by this subsection (d).

. . . .

(3) For any claim for a period of unemployment commencing on or after July 1, 2018, no disqualification under this subsection (d) shall apply if the labor dispute is caused by the failure or refusal of the employer to comply with an agreement or contract between the employer and the claimant, including a collective bargaining agreement[,] . . . or a State or federal law pertaining to hours, wages, or other conditions of work.

[N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018).[3]]

New Jersey, through N.J.S.A. 43:21-5, is not seeking "to regulate private conduct that is subject to the regulatory jurisdiction of the [NLRB]" or "regulate any private conduct of the parties to a labor dispute," but "[i]nstead, it [is seeking] to administer its unemployment compensation program in a manner that it believes best effectuates the purposes of that scheme." See New York Telephone, 440 U.S. at 545-46. New Jersey's statute is similar to Pennsylvania's

---

[3] This quoted language is from the version of the statute that was enacted on August 24, 2018, as this was the statute in effect at the time claimants filed for unemployment benefits with the Division. See N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018). N.J.S.A. 43:21-5 has since been amended, with the most recent amendment occurring in 2024. See N.J.S.A. 43:21-5 (1986) (amended 2024).

unemployment benefits statute. Although Pennsylvania courts had to determine whether the work stoppage was due to a strike or lock-out and whether the workers or employer initiated the work stoppage, see Duer Spring, 906 F.2d at 971, the Board here was tasked with determining whether the labor dispute was caused by CCC's refusal or failure to comply with the Settlement Agreement and had to decide whether CCC's implementation of the bonus program occurred without an impasse in bargaining or other lawful exceptions.

Pursuant to N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018), the Division had the authority to determine whether a worker's "unemployment [was] due to a stoppage of work which exist[ed] because of a labor dispute at the factory, establishment or other premises at which the individual is or was last employed" and whether "the labor dispute [was] caused by the failure or refusal of the employer to comply with an agreement or contract between the employer and the claimant, . . . or a State or federal law pertaining to hours, wages, or other conditions of work." Most importantly, like the New York and Pennsylvania statutes, the New Jersey statute does not "regulate[] the conduct of the parties in the dispute, although [it] . . . ameliorate[s] the effect on the workers of the dispute to some extent." See Duer Spring, 906 F.2d at 971.

B.      Substantial Evidence in the Record

CCC also claims the Board's determination is not supported by the record. We disagree.

First, the Board's decision "follow[ed] the law," Sparta, 258 N.J. at 342 (quoting Allstars, 234 N.J. at 157), because the Board held claimants were not disqualified from receiving unemployment benefits, finding the "labor dispute [was] caused by the failure or refusal of the employer to comply with an agreement or contract between the employer and [claimants]," N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018).

Second, the "record contains substantial evidence to support the findings on which the agency based its action." Sparta, 258 N.J. at 342 (quoting Allstars, 234 N.J. at 157). The Board provided in its final determination that "[t]he parties in this case stipulated (agreed on) all historical facts (events, dates, documents), and that [N.J.S.A. 43:21-5(d)(3)] is the relevant deciding section." The Board relied upon the Settlement Agreement language, which plainly stated CCC would not "unilaterally implement new employee bonus programs at a time when no impasse in bargaining with the Union has occurred or any other lawful exception exists." The record before the Board demonstrates CCC implemented its new employee bonus program "in the midst of ongoing negotiations," which

supports the Board's contention there was no impasse or other lawful exception at the time CCC implemented the bonus program.

Third, when it applied N.J.S.A. 43:21-5 (1986) (amended Aug. 24, 2018) to the facts, it did not "'clearly err[] in reaching a conclusion that could not reasonably have been' reached." Sparta, 258 N.J. at 342 (quoting Allstars, 234 N.J. at 157).

We conclude the Board's decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

16                                                                      A-1624-23